UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

**WINDWARD BORA, LLC**,                                     :

                        Plaintiff,          :

        – against –                                   :      **MEMORANDUM
                                         DECISION AND ORDER**
                                       1:19-CV-02256 (AMD) (ST)

**U.S. BANK NATIONAL ASSOCIATION AS
LEGAL TITLE TRUSTEE FOR TRUMAN 2016**        :
**SC6 TITLE TRUST LETTER**,                                :

                      Defendant.          :

-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On April 17, 2019, Windward Bora, LLC brought this quiet title action against U.S. Bank

National Association, seeking cancellation and discharge of its mortgage obligation.  (ECF No.

1.)  U.S. Bank moves to dismiss the plaintiff's complaint for failure to state a claim.  (ECF No.

20.)  For the following reasons, the defendant's motion to dismiss is denied.  The plaintiff is

granted leave to amend its complaint to name the current title owner, 123 Powell LLC, as a

party.

## BACKGROUND[1]

On March 8, 2006, Tanisha Allen executed a note and mortgage for $499,900.00 in favor

---

[1] At the motion to dismiss stage, the court is limited "to the factual allegations in [the] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).  A "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quotation marks omitted).  I take judicial notice of the court documents attached to the parties' filings, as well as the notices and documents associated with the disputed note and mortgage, which are incorporated into the complaint by reference.

of Downey Savings and Loan Association, F.A., the defendant's predecessor-in-interest, for a

residential property located at 1429 Pitkin Avenue in Brooklyn.  (ECF No. 1-1.)  Later that

month, Allen executed a second note and mortgage in the amount of $160,865.00 in favor of

National City Bank.  (ECF No. 1 ¶¶ 9-11.)[2]  Allen stopped making monthly payments in

October of 2008.  On March 31, 2009, Downey brought a foreclosure action in New York

Supreme Court, Kings County.  (ECF No. 1-6; ECF No. 1 ¶ 13.)  Two years later, the parties

agreed to discontinue the action, and the case was dismissed on July 25, 2011.  (ECF No. 1-7;

ECF No. 1 ¶ 14.)

Shortly thereafter, on August 18, 2011, Downey sent Allen a 90-day pre-foreclosure

notice in which it advised Allen that her "home loan [was] 1052 days in default[,]" and that she

could "cure this default by making the payment of $116,079.09 by September 18, 2011."  (ECF

No. 20-8 at 76.)  In the notice, Downey also warned Allen that failure to resolve the matter

within 90 days could result in legal action against her.  (*Id.*)  A few months later, on January 25,

2012, Downey sent Allen a notice of intent to foreclose: to prevent foreclosure, "[the defendant]

must receive full payment for the outstanding total amount due within thirty (30) days of this

notice.  As of today, such amount is $130,486.69."  (*Id.* at 82.)  Downey transferred the note and

mortgage to the defendant in January of 2012.  (*Id.* at Ex. 4.)  The defendant sent Allen two more

90-day pre-foreclosure notices, one dated December 9, 2013, and another dated January 17,

2017.  (*Id.* at 84, 124.)  Both notices alerted Allen that her loan was in default, and that she could

cure the default by paying the amount that she owed up until the mailing date of each notice.

(*Id.*)

Beginning in January of 2014, the defendant also sent Allen notices of interest rate

---

[2] This second mortgage secured repayment of the note against the same residential premises.

adjustments.  (*Id.* at 92-121.)  These notices outlined the current rate and monthly payment for

which Allen was responsible, as well as the new rate and monthly payment she would owe given

the interest rate adjustment.  (*Id.*)  The defendant sent out a total of fifteen interest rate notices;

the last notice was for the pay period beginning on May 1, 2016.  (*Id.*)  Each included the phrase

"Total Monthly Payment," highlighted in bold letters, after each interest rate adjustment.  (*Id.*)

On March 4, 2015, Allen transferred the property to 123 Powell LLC by quitclaim deed.  (ECF

No. 20-6.)

The plaintiff acquired National City Bank's note and mortgage in 2018, and commenced

a quiet title action pursuant to RPAPL § 1501(4) to cancel and discharge the defendant's note

and mortgage as unenforceable.  (ECF No. 1.)  The plaintiff did not join the original borrower,

Allen, or the current title owner of the property, 123 Powell LLC.  (ECF Nos. 20-2, 20-6; ECF

No. 26 at 9-10.)  On October 4, 2019, the defendant filed this motion to dismiss.  (ECF No. 20.)

### STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This means that a complaint must "plead[] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While this standard does not

require "detailed factual allegations," it requires more than "a formulaic recitation of the

elements of a cause of action" and more than an "unadorned, the-defendant-unlawfully-harmed-

me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  In deciding a Rule

12(b)(6) motion to dismiss, the Court "must accept as true all of the allegations contained in the

complaint;" however, this tenet does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 678

(internal citations omitted).

## DISCUSSION

A plaintiff seeking to discharge a mortgage pursuant to RPAPL § 1501(4) must show: (1) that it has an estate or interest in the real property; (2) that all necessary parties to the action were joined; and (3) that the applicable statute of limitations for commencing a foreclosure action has expired without the commencement of a foreclosure action. *Gustavia Home LLC v. Envtl. Control Bd.*, 2019 WL 4359549, at *5 (E.D.N.Y. Aug. 21, 2019) (citation omitted).

The parties agree that the plaintiff has an interest in the property. They disagree about whether all the necessary parties were joined, and whether the statute of limitations to bring a foreclosure action has expired. The defendant argues that both the borrower, Allen, and title owner, 123 Powell LLC, have interests in the property, and are thus necessary parties that should have been joined in the action. (ECF No. 20-1 at 7-9.) The defendant also argues that the 2011 stipulation of discontinuance in the foreclosure action decelerated the mortgage, and that the mailing of additional contractual and statutory notices is evidence of the defendant's revocation of acceleration. (*Id.* at 9-14.)

## I.    Necessary Parties

"Where it appears to the court that a person not a party to the action may have an estate or interest in the real property which may in any manner be affected by the judgment, the court . . . may direct that such person be made a party." RPAPL § 1511(2). "[T]he proper remedy for nonjoinder in such a case would be to direct that the party be joined as a defendant, not 'to dismiss the action upon the motion of the party who was properly named.'" *Central Mtge. Co. v. Davis*, 149 A.D.3d 898, 900 (2d Dep't 2017) (quoting *Dime Sav. Bank of N.Y. v. Johneas*, 172 A.D.2d 1082, 1083 (4th Dep't 1991)).

The defendant argues that both the title owner and original borrower have interests in the property, and thus are necessary parties that should have been joined in the action.  (ECF No. 20-1 at 7-9.)  123 Powell LLC, the current title owner, undoubtedly has an interest in this action, and thus should have been joined as a party.  *See* RPAPL § 1511(1) ("[T]he person in possession shall be made a party to the action"); *see also Guccione v. Estate of Guccione*, 84 A.D.3d 867, 870 (2d Dep't 2011) (a nonparty purchaser of a property would be affected by any judgment made in regard to the property, and therefore "is a necessary party to the action").  On the other hand, Allen conveyed her entire interest in the property to 123 Powell LLC and is no longer a necessary party.  *Federal Nat. Mortg. Ass'n v. Connelly*, 84 A.D. 2d 805, 805 (2d Dep't 1981) ("the rule is that a mortgagor who has made an absolute conveyance of all [her] interest in the mortgaged premises . . . is not a necessary party . . . .") (citations omitted).  As explained below, dismissal is not appropriate on the other grounds the defendant raises, so the plaintiff is granted leave to amend its complaint to add 123 Powell LLC as a party.

**II.     Statute of Limitations**

In New York, the statute of limitations to commence a foreclosure action is six years from the lender's acceleration of the debt.  N.Y. C.P.L.R. § 213(4).  Commencement of a foreclosure action accelerates the entire debt.  *See Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 87 (E.D.N.Y. 2019) (citation omitted).  "To stop the statute of limitations, the mortgagee . . . may revoke its decision to accelerate [the] debt by an 'affirmative act or revocation' taken within the six-year limitations period . . . ."  *Zucker v. HSBC Bank, USA*, 2018 WL 2048880, at *6 (E.D.N.Y. May 2, 2018) (citing *Kashipour v. Wilmington Sav. Fund Soc'y*, 144 A.D.3d 985, 987 (2d Dep't 2016)).

The parties agree that Downey accelerated the mortgage and triggered the statute of

limitations by bringing a foreclosure action on March 31, 2009.  The point of dispute is whether the defendant ever affirmatively decelerated the loan before the statute of limitations expired on March 31, 2015.  The defendant argues that the parties' stipulation of discontinuance was an affirmative deceleration of the loan that stopped the clock; the fact that the defendant mailed additional contractual and statutory notices, the defendant says, is additional evidence of the deceleration.  (ECF No. 20-1 at 9-14.)  The plaintiff responds that mere discontinuance of the foreclosure action, without more, was not an affirmative act of deceleration, and thus did not toll the statute of limitations.  (ECF No. 26 at 5-15.)

"New York courts have acknowledged that the law has not specified exactly which act or acts are sufficient to revoke acceleration." *In re Taylor*, 584 B.R. 590, 595 (Bankr. E.D.N.Y. 2018) (collecting cases).  The question of whether a stipulation of discontinuance alone tolls the statute of limitations has received "considerable, though inconsistent treatment." *OneWest Bank, N.A. v. Simon*, 2019 WL 1320275 at *9 (E.D.N.Y. Mar. 22, 2019) (citations omitted).  "[T]he New York Court of Appeals has not addressed whether the voluntary discontinuance of a foreclosure action constitutes an affirmative act revoking a prior acceleration." *U.S. Bank Tr., N.A., as Tr. for LSF9 Master Participation Tr. v. Adhami*, No. 18-CV-530, 2019 WL 486086, at *5 (E.D.N.Y. Feb. 6, 2019) (quoting *Zucker*, 2018 WL 2048880, at *7 (E.D.N.Y. May 2, 2018)). "[T]he pivotal concept in the jurisprudence emerges from a series of Appellate Division decisions recognizing, first, that the election to accelerate that occurs when a mortgagee moves for foreclosure is capable of being revoked, and second, that what is required to effect that revocation is 'an affirmative act by the lender' during the limitations period that the foreclosure action triggered." *OneWest*, 2019 WL 1320275, at *9 (E.D.N.Y. Mar. 22, 2019) (collecting cases).  Although a district court is not "strictly bound" by intermediate appellate courts, in the

absence of a decision from the Court of Appeals, ruling from such courts are "helpful indicators of how the state's highest court would rule." *Adhami*, 2019 WL 486086, at *5.

The parties agree that dismissal of a case alone does not "constitute an affirmative act of revocation by the lender," but disagree whether a voluntary stipulation of discontinuance stops the clock under New York state law.  The plaintiff cites Second Department decisions holding that discontinuance of a foreclosure action does not, "in itself[] constitute an affirmative act to revoke its election to accelerate" where, as here, the stipulation is "silent on the issue of the revocation of the election to accelerate, and did not otherwise indicate that the plaintiff would accept installment payments from the appellant[.]" *Ditech Fin., LLC v. Naidu*, 175 A.D.3d 1387, 1389 (2d Dep't 2019), *leave to appeal granted*, 34 N.Y.3d 910 (2020); *see also Freedom Mtge. Corp. v. Engel*, 163 A.D.3d 631 (2d Dep't 2018), *leave to appeal granted in part and denied in part*, 33 N.Y.3d 1039 (2019); *Bank of N.Y. Mellon v. Craig*, 169 A.D.3d 627 (2d Dep't 2019). The defendant cites *OneWest* and *Adhami*, cases in which two judges of this Court—the Honorable Raymond Dearie and the Honorable Pamela Chen—concluded that a voluntary discontinuance alone can constitute revocation of acceleration.  *See OneWest,* 2019 WL 1320275, at *10 ("When an action is discontinued, it is as if [it] had never been; everything done in the action is annulled and all prior orders in the case are nullified") (citations and quotations omitted); *Adhami*, 2019 WL 486086, at *13-14 (holding that action was not time-barred because the prior foreclosure action was voluntarily discontinued one year after commencement of the action, evidencing the intent to not bring another foreclosure action immediately after discontinuance).  Judge Chen and Judge Dearie cited trial-level cases that "found that '[w]ithdrawing the prior foreclosure action is an affirmative act of revocation' that tolls the statute of limitations." *Adhami*, 2019 WL 486086, at *5 (E.D.N.Y. Feb. 6, 2019); *see also*

*OneWest*, 2019 WL 1320275, at *10.  After those decisions, however, the Second Department either reversed or abrogated the decisions upon which Judges Chen and Dearie relied.  *See, e.g., Bank of N.Y. Mellon v. Dieudonne*, 171 A.D.3d 34 (2d Dep't 2019) (reversing lower court); *Ditech Fin., LLC v. Naidu*, 175 A.D.3d 1387, 1389 (2d Dep't 2019), *leave to appeal granted*, 34 N.Y.3d 910 (2020); *see also Christiana Tr. v. Barua,* 184 A.D.3d 140, 147 (2d Dep't 2020) ("Various reported trial level decisions and orders holding to the contrary should no longer be followed.").

In its most recent pronouncement, the Second Department observed that it had "repeatedly held that a lender's mere act of discontinuing an action, without more, does not constitute, in and of itself, an affirmative act revoking an earlier acceleration of the debt," because "the voluntary discontinuance of a foreclosure action may be occasioned for any number of different reasons, including those that have nothing to do with an intent to revoke the acceleration."  *Barua,*184 A.D.3d at 147.  The parties agree that the stipulation is silent on the issue of revocation, and said nothing about whether the defendant would resume accepting monthly payments, or otherwise stipulate that the defendant's predecessor-in-interest intended to decelerate the foreclosure action. In short, the stipulation contains none of the provisions that the Second Department described as necessary for a stipulation of discontinuance to stand on its own as evidence of revocation.[3] *Ditech*, 175 A.D.3d at 1389.  In any event, the New York Court of Appeals will resolve the issue shortly; appeals are pending in that court in *Ditech* and *Engel*.[4]

Even if the stipulation alone did not constitute an affirmative act of revocation, the

---

[3] The dissenting judge in *Christiana Tr. v. Barua* characterized the Second Department's rationale as a "deviation from [the] Court's prior precedent[.]"  *See Christiana Tr. v. Barua*, 184 A.D.3d 140, 163 (2d Dep't 2020) (Miller, J.) (concurring in part and dissenting in part).

[4] The defendant may renew its motion if the Court of Appeals reverses and concludes that a voluntary discontinuance can constitute an affirmative act of revocation.

defendant argues that it mailed other contractual and statutory notices to the borrower that, in combination with the stipulation, show that the defendant revoked the acceleration of the mortgage.  A letter can decelerate a loan if it "contains an express demand for monthly payments" or "is accompanied by copies of monthly invoices . . . or other forms of evidence demonstrating that the lender was truly seeking to de-accelerate and not attempting to achieve another purpose under the guise of de-acceleration."  *Milone v. U.S. Bank N.A.*, 164 A.D.3d 145, 154 (2d Dep't 2018).  The letter "must be clear and unambiguous to be valid and enforceable."  *Id.*  (citations omitted).  "A 'bare' and conclusory de-acceleration letter without . . . other evidence," on the other hand, "may raise legitimate questions about whether or not the letter was sent as a mere pretext to avoid the statute of limitations."  *Id.*

Neither the defendant's letter to Allen nor the accompanying notices demonstrate as a matter of law that the defendant intended to decelerate the loan.  Nothing in the notices suggest that the defendant intended to forgive the default and revoke the acceleration.  Each notice "sought an amount lower than the accelerated amount, which may evidence an intent to de-accelerate."  *Federal Natl. Mtge. Assn. v. Rosenberg*, 180 A.D.3d 401, 403 (1st Dep't 2020).  However, the notices did not "contain[] an express demand for monthly payments" or "copies of monthly invoices . . . or . . . other forms of evidence demonstrating that the lender was truly seeking to de-accelerate . . . "  *Milone*, 164 A.D.3d 145 at 154.[5]  The defendant argues that the interest rate adjustments notices are monthly invoices that further evidence intent to decelerate,

---

[5] The defendant cites *Fed. Natl. Mortg. Assn. v. Rosenberg* for the proposition that a 90-day notice like the one the defendant sent to Allen can be evidence of intent to revoke.  But the First Department held that "seeking a lower amount in and of itself is not enough to establish, as a matter of law, that the 90-day notice 'destroy[ed]' the effect of the sworn statement that the plaintiff had elected to accelerate the maturity of the debt" and was only "sufficient to meet the 'minimal showing' required on a motion to restore."  *Rosenberg*, 180 A.D.3d at 403.

but the notices do not tell the borrower to resume sending monthly payments, or otherwise suggest any intent to revoke the acceleration of the loan.  Instead, the notices appear to explain to the borrower what her monthly payment would be after each interest rate adjustment, as required by 12 C.F.R. § 1026.20(c).

## CONCLUSION

Accordingly, the defendant's motion to dismiss is denied.  The plaintiff is granted leave to amend its complaint within fourteen days of the entry of this Order to name 123 Powell LLC as a party to this action.

**SO ORDERED.**

                                          ____s/Ann M. Donnelly_____

                                          ANN M. DONNELLY
                                          United States District Judge

Dated: Brooklyn, New York
       September 15, 2020